245 So.2d 142 (1971)
Maxwell SAYET, M.D., D/B/a Atlantic Clinical Laboratories, Appellant,
v.
INTERSTATE BLOOD BANK, INC., Harold Lefelstein, Hialeah Hospital, Inc., a Florida Corporation, Appellees.
No. 70-913.
District Court of Appeal of Florida, Third District.
February 23, 1971.
Rehearing Denied March 26, 1971.
*143 Blackwell, Walker & Gray, Miami, for appellant.
Talburt, Kubicki & Vogler, and Jeanne Heyward, Miami, for appellees.
Before PEARSON, C.J., and BARKDULL and HENDRY, JJ.
PEARSON, Chief Judge.
The plaintiff, who is not a party to this appeal, brought an action against the appellant, Maxwell Sayet, M.D., d/b/a Atlantic Clinical Laboratories, alleging that the appellant furnished to defendant Hialeah Hospital, Inc., defective or unwholesome blood which was injected into plaintiff's body to plaintiff's great personal injury.
The appellant is Maxwell Sayet, M.D., d/b/a Atlantic Chemical Laboratories. He appeals an order quashing service upon a third-party defendant, Interstate Blood Bank, Inc. of Memphis, Tennessee. The Blood Bank is the appellee here. Service on the appellee was attempted pursuant to F.S. § 48.181, F.S.A. which provides for all foreign corporations which operate, conduct, engage in or carry on a business in the state that the Secretary of State is appointed as agent for the service of process arising out of any transaction or operation connected with or incidental to the business conducted in this state. The trial judge found from the evidence before him as follows:
"* * * From the evidence and from the law this Court finds that the Third Party Defendant, INTERSTATE BLOOD BANK OF MEMPHIS, TENNESSEE, carried on no activity in this State, had no agent, servant or employee in this State and that all shipments of blood were in interstate commerce and that there was no modecum of control of the blood; thus, service pursuant to the Statute was ineffective."
The facts before the trial court were that Interstate Blood Bank of Memphis, Tennessee, furnished human blood for medicinal purposes to hospitals and blood dispensing organizations in the State of Florida. The volume of business was appreciable but the method of doing business was such that Interstate Blood Bank received all its orders for blood by long distance telephone and delivery was made by air express.
The due process requirement necessary for the acquisition of jurisdiction under state "long arm" statutes as established by many cases is that the defendant must have certain "minimum contacts" with the state, such that the maintenance of the suit does not offend traditional notions of "fair play and substantial justice." State ex rel. Guardian Credit Indem. Corp. v. Harrison, Fla. 1954, 74 So.2d 371; Lake Erie Chemical *144 Company v. Stinson, Fla.App. 1965, 181 So.2d 587; Fawcett Publications, Inc. v. Rand, Fla.App. 1962, 144 So.2d 512; International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).
The question thus becomes whether or not the transactions of Interstate Blood Bank whereby they furnished human blood to the hospitals and dispensaries in the State of Florida meets the criteria of "doing business" in Florida as established under the "minimum contacts" requirements. Lake Erie Chemical Company v. Stinson, Fla.App. 1965, 181 So.2d 587. In following the basic requirements of International Shoe Co. v. Washington, supra, the courts of this state have long recognized that each case questioning the requisites as to service of process under the "long arm" statute must turn on its own facts and have discarded any type of formal tests. State ex rel. Guardian Credit Indem. Corp. v. Harrison, Fla. 1954, 74 So.2d 371; Wm. E. Strasser Construction Corp. v. Linn, Fla. 1957, 97 So.2d 458; McCarthy v. Little River Bank and Trust Company, Fla.App. 1969, 224 So.2d 338.
The record establishes that Interstate Blood Bank, although not maintaining any offices or agents in Florida, has for each of the last four years systematically and regularly sold blood or blood products to customers within the State of Florida averaging sales of approximately $150,000 per year. We must admit to a strong feeling that public policy influences us to a holding that a supplier of human blood for the purpose of transfusions into the body of citizens of this state ought to be amenable to service of process by the citizens of this state in an action for personal injuries resulting from the transfusion of contaminated blood. It has been estimated that as many as 3,500,000 transfusions are given in the United States each year[1] and that the transmission of an infectious disease from contaminated blood, as in this case, occurs in one out of every 500 transfusions.[2]
The Supreme Court of Florida in DeVaney v. Rumsch, Fla. 1969, 228 So.2d 904, reviewing F.S. § 48.181, F.S.A. in light of the opinions of the District Courts acknowledged that conflicting tests were being used to determine what constitutes "doing business."
In DeVaney v. Rumsch, supra, the Supreme Court adopted the pecuniary benefit theory saying: "The determinative question is whether goods, property or services are dealt with within the state for the pecuniary benefit of the person providing or otherwise dealing in those goods, property or services."
In further discussion of F.S. § 48.181, F.S.A. the Supreme Court of Florida in DeVaney v. Rumsch, supra, stated that anyone who exercises the privilege of entry into the state in anticipation of economic gain is subject to service of process.
* * * * * *
"We hold the intent of the Legislature in enacting Florida Statute § 48.181, F.S.A., to be that any individual or corporation who has exercised the privilege of practicing a profession or otherwise dealing in goods, services or property, whether in a professional or nonprofessional capacity, within the State in anticipation of economic gain, be regarded as operating a business or business venture for the purpose of service under Florida State § 48.181, F.S.A., in suits resulting from their activity within the State."
In obtaining a large volume of sales of their product Interstate Blood Bank systematically and continuously participated *145 in economic activity within the state over a period of years. In the course of their economic activity in the state they received the benefits and protections of the Law of Florida and whereas the product dealt with here afforded some risk to the citizens of this state, we hold that they came within the requisites of "doing business" set forth in F.S. § 48.181, F.S.A. so as to render them amenable to process and the jurisdiction of the courts of this State. See State ex rel. Guardian Credit Indem. Corp. v. Harrison, 74 So.2d 371 (Fla. 1954); Zirin v. Charles Pfizer & Co., Inc., 128 So.2d 594 (Fla. 1961); Continental Copper & Steel Indus., Inc. v. E.C. "Red" Cornelius, 104 So.2d 40 (Fla.App. 1958); Spiegel, Inc. v. Johnson, 235 So.2d 38 (Fla.App. 1970); International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Phillips v. Hooker Chemical Corporation, 375 F.2d 189 (5th Cir.1967); Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961).
Reversed.
NOTES
[1] Diskinson, F.G. and Welker, E.L., Survey of Blood Banks in the U.S. and Possessions: A report to Committee on Blood Banks, Bulletin 75, Bureau of Medical Economic Research, American Medical Association, Chicago, 1950.
[2] A.S. Wiener, Prevention of Accidents in Blood Transfusions, J.A.M.A. 156: 1301 (Dec. 4) 1954.